Good morning, Your Honor. May it please the Court, my name is Paul Fisher, and I represent Virtual Media, Valley Outdoor, Outdoor Media, Aubrey Yong Chiu, and Corey Faulkner. In reviewing the briefs in this case, I think the starting point should be where the burden of proof lies. As the Court is aware, this is a decision from cross motions for summary judgment. Under RAV v. City of St. Paul, the U.S. Supreme Court held that a content-based restriction on speech is presumptively unconstitutional. Under U.S. v. Playboy Enterprise Groups, the Court also held that where the government seeks to control speech, it bears the burden of proving that that regulation is constitutional. We believe that the District Court turned this process on its head, essentially, when it tried to find any reason it could to save the City's ordinance. The summary judgment motion filed by appellants below pointed out many, many problems with the sign ordinance. And in fact – What sign ordinance are we talking about now? It changed. Yes, Your Honor. I have had a problem in this case with mootness of some or all of the claims because the ordinance did change. There's a constitutional challenge to an ordinance no longer in effect. Yes, Your Honor, that is – mootness certainly did come up. However, the trial court held that the size and height restrictions contained in the original ordinance, the one in effect at the time the signs were constructed, made them illegal. It was for that reason that when the City enacted its new ordinance and included a clause which defined legal nonconforming structures as those in conformity with the original law, that the original law did not become moot. The trial court would have had to have made some decision as to the constitutional validity of the original ordinance, the one in effect when the signs were constructed, and in effect for seven months until the City adopted a new ordinance, because the new ordinance predicated legal standing on compliance with the original ordinance. If the original ordinance was constitutionally invalid, then, of course, the provision in the new ordinance, which found that only signs in conformity with the original ordinance were legal, would have to be examined. In this case, the district court did not do that. The district court – it's a little bit confusing because the district court found that both our challenge to the constitutionality of the sign ordinance, as well as the City's seeking a declaratory relief judgment that its original ordinance was constitutional, were both moot. If that's the case, then why did the district court go ahead and issue a judgment finding that the signs did not comply with the size and height restrictions contained in the original ordinance, and therefore were illegal both under the original ordinance and under the new ordinance? Let me see if I've got this right. Certainly. You should have been grandfathered in because the restrictions that prohibited your signs were null and void. That's correct, Your Honor. That's it in a nutshell. And, in fact, if you – in the appellate record, there is a declaration which indicates that there are at least two other billboards. And, by the way, there's a lot of reference in the briefs to these huge structures. These are the same things that you see on the freeways here. This is not something unique. This is an industry standard. They're 14 feet by 48 feet. That's the size these vinyls are printed and circulated around the country, and that's the same size message you see throughout the city of San Francisco on all of the highways. There is in the appellate record at pages 491-492 two other billboards which are still in place today. But, apparently, the city is considering grandfathered because the city – and it's because the city has apparently concluded that the – Where in the record does that show? That's in, Your Honor, appellate excerpt of record page 491-492. There's a declaration at the time the summary judgment motions were made that there are two other billboards belonging, I believe, to Eller Media Group, which was recently purchased by Clear Channel Communications, which are in existence in the city. Apparently old structures. So the city is applying that grandfather clause to signs which conform with the law at the time they were constructed. So the district court's conclusion somehow that this all becomes moot may be proper if the district court would then accept the proposition that the signs become grandfathered because the old law was invalid. But the court can't escape – the district court should not have escaped the process of determining the constitutionality of the ordinance. In effect, as I said, at the time the signs were constructed and not changed for seven months, but until seven months later. In fact, this is a common problem – pardon me. What the district court, if I understand it correctly, did was say, well, we don't really have to decide the constitutional question because we'll kind of – even if we assume that the things that are challenged in this ordinance are unconstitutional, even if we assume that without actually deciding it, the size and height restrictions, size and width or whatever it is, size and weight maybe, aren't challenged and they would be severable and therefore – Well, that goes back to the way I opened this discussion by talking about the burden of proof. You have a physical structure of sign. You can't really regulate it except by talking about its size, height and placement. We pointed out that the old law, even though it's not our burden to do so, the old law was filled with problems, with distinctions made between who was the speaker, between what the message was, bestowing on the government official the right to – But not in terms of the size and height restrictions, was it? Those weren't tied to the labels or the content. Yes, with due respect, Your Honor, they are because each particular category of sign has a different size restriction. So if billboards are a banned type of sign, there is no size regulation for them because they're not allowed. Okay. So you say that the size and height restrictions were irrelevant for purposes of the billboard? They were. And there is a specific allegation in the complaint that the city has attempted to destroy this medium of communication. And by reducing the size of principal signs less than that of billboards, they essentially do that. So how then could the district court determine that the signs of your clients violated those size and height restrictions if those restrictions could not be applied to billboards? Because the court, I believe, analyzed it at the city's suggestion that because these signs were larger than the maximum type of sign allowed in the city, that they could not possibly be legal. Well, what's wrong with that reasoning? If your sign exceeded the maximum size and height limitation contained in the ordinance, why wasn't the court acting properly in determining that there is no way it could be in compliance? Because we challenged the ordinance whole cloth. And to apply severance, it's not sufficient to put a paragraph in the municipal code, which most municipal codes have. Why is that severance? It seems to me that if your sign would be illegal under a totally non-content time, place, and manner type restriction, in this case size and height, then no court need reach any of the other challenges. So it doesn't matter if you made other challenges. What severance has to do with is an entirely different problem, and that is where part of the law is constitutional, part of the law is unconstitutional, and you're deciding whether the law as a whole can survive a constitutional challenge or whether the constitutional parts of it can survive a constitutional challenge. It seems to me you don't even reach that here. Well, except, Your Honor, again, you can't regulate a building without any kind of structure without talking about size, height, and location. We didn't challenge the locational requirements. We didn't challenge any specific element. We challenged this entire regulatory scheme, which attempted to give government officials the right to control speech. Well, that doesn't mean you have to get far enough down the road for the severability analysis, I don't think. Well, I read a sign that was within the size and height restrictions, and then you said, but there is a content restriction. Only nonprofits and not-for-profits are allowed to put up the signs, something of that nature. Your Honor. That would be something that might get to the more serious constitutional issues. However, what size restriction were you to use when this particular category of sign was prohibited? Because there was no specific size description for a billboard. Now, the billboards that exist in the city that are described in the record that I mentioned, those are bigger than are permitted, but those are grandfathered in because apparently no one challenged the ordinance at the time or the city has gone through several generations of the ordinance. But I think the problem the district court had was that it needs to start off with the proposition that the right to speak belongs to the public, and the government can regulate that right if it's very, very careful about how it does so. And the job of the district court here is not to find any reason to preserve the government's right to control speech in this case. Once it was shown that the ordinance affected speech, the government had the burden of coming forward and explaining how each and every one of these restrictions furthered a legitimate government interest based on whether it was content-based or content-neutral, rising to the appropriate standard and test that the Supreme Court has enunciated. Go ahead. Go ahead. You would agree, wouldn't you, that most courts have upheld size and height restrictions against a First Amendment challenge? I would not, Your Honor. And what's your best case authority for the proposition that size and height restrictions generally run afoul of the First Amendment? I wouldn't state it that way. What I would go back to is the idea that you can't regulate signs without regulating their size, height, and the only other thing is where they're going to be. And then, of course, the content creates huge additional problems. But if you look at the Moreno Valley case that we cited extensively in our brief, the county had a size restriction there. In fact, the signs in that case, I believe it was 300 square feet. And in this instance, in Moreno Valley, the signs were the same size as these signs are. But the court said that the city didn't have a structured plan of regulation that could be enforced any longer. The court couldn't simply come forward and say the only thing we're going to enforce is the size and height restrictions because they would not have carried forth the intent of the legislature. And the district court in this case has sort of short-circuited this because it never went back and made a statement as to whether the law was unconstitutional or not. So you're relying on the case of outdoor advertising versus City of Moreno for your proposition? Yes, Your Honor. Could I move to the question, you didn't get building permits or electrical code inspection or permit or whatever you need. Yes. Why isn't that enough for the city to simply deny your position? Well, I would refer the court again to the Moreno Valley case as well as to Shuttlesworth versus City of Birmingham. If, for example, hypothetically the city of Los Angeles today said that no Muslim could open a business in the city and had a separate law codified in another section that said you need a business license, I don't believe this court would be in a position of punishing those people who ignored that law, that obviously unconstitutional law, and opened their business because they didn't go and submit a little piece of paper that a clerk is going to stamp and approve. There you would need an affidavit from the person saying I am a Muslim. And provided there was such an affidavit, you would be right because that would be sufficient to demonstrate the futility. Where is the demonstration of the futility here? Futility in this case, as in the Desert Outdoor case, was that the governmental body in this instance had indicated that it would not allow these types of structures. If the structures were not allowed in Desert Outdoor, the city sued the billboard companies to have the signs removed. That's exactly what happened here. The city here filed its own counterclaim seeking declaratory relief that the signs are illegal. How in the world is the city going to be in a position of issuing a permit to allow a use which it has declared to be a misdemeanor? In fact, I believe the government official issuing the permit in that case – I don't know if they do. Maybe they issue permits subject to the sign department. Okay. They say the electrical is okay, permit granted subject to sign department approval. There's no evidence in the record of that. We submitted – Put in any evidence? Yes, Your Honor. We submitted a declaration stating that throughout the State of California in virtually every municipality we've dealt with, they will not issue building permits for a use which is not permitted under its zoning laws. That's not this city, though. That's not this city. But then again, if one is to apply the document of futility, futility is only going to be applied where – there's a difference between proving something to be a futile act and having done the act to show that it wouldn't have accomplished anything. That's sort of amazing to me. That's like filing an affidavit in a Fairbanks case saying, well, I know that the Anchorage municipal authorities wouldn't have given me relief. And the Fairbanks municipal authorities would be inclined to say, give us a chance to do the right thing. But, Your Honor, how do you then reconcile Shuttlesworth, where the court held, the U.S. Supreme Court held, that because it was clear the city would not have issued the permits, the parties did not have to go get one, did not have to apply for one? You know, your argument reminds me a little bit of the city outlaws' sound trucks. So you put out a sound truck because that's speech, and you refuse to submit to emission controls because you say, well, look, this is an illegal truck. They're not going to give me a pass on my emissions test so I can drive with a dirty emissions truck because there's an unconstitutional ban on sound trucks for totally different reasons. I'm not. Your Honor, let me read you what the city attorney said in his opposition to the motion for summary judgment. Even if the court finds certain other provisions of the ordinance in effect at the time of suit or the current sign ordinance, so old and new, were or are impermissible, the billboards would still violate the municipal zoning portions of the ordinance, regulating size and height of signs, and permits would have been denied. That's the city attorney's statement. It can be found at. . . What permit is he talking about there? Beg your pardon? What permit is he talking about there when he says a permit would be denied? The only permit, I believe, the only permits that the city issues for these types of structures, sign permits and building permits. I thought you were talking about some sort of a. . . What is the building code and the electrical. . . Well, there's a uniform building code and an administrative code governing electrical requirements, but these are basically tape measure type issues. You measure the distance between studs. You do something very, very objective. There was a subsequent nuisance action, apparently, where there's. . . I thought I read a reference in there. There's a cause of action containing the counterclaim for finding that the signs are a nuisance because they don't have permits. But what the district court did not deal with. . . Which permits? Is that a sign permit they're talking about, or do you get a different permit from electrical and building? Well, the difficulty is that the city here can create its own laws and did so in this case during the course of the litigation. They can put in whatever kind of requirements they want. The fact is, though, I need to go to the city to get a piece of paper saying I can put up this sign. It is true that a building inspector comes out and sees whether the sign is. . . has a deep enough cement footing and all the physical requirements of the uniform building code. And you're saying we can ignore those? Well, the evidence before the district court was that the city would not have issued such permits. Therefore, the problem is the but-for cause of our inability to get. . . the proximate cause of our inability to get building permits is the city's enforcement of what we believe to be an illegal law. I'd like to reserve some time, if I may, if the Court has no further questions for me. Thank you. Thank you, Your Honor. May it please the Court. Erica Craven representing Appellate City of San Mateo in this case. I think the panel has identified the primary issues that the city contests with the appellant's stance before this Court. I'd like to clarify some issues in the record that have been misstated by the appellants today. First and foremost, addressing the appellant's most recent argument first about the apparent admission of the city in its brief opposing summary judgment. As the district court correctly found in context, read in context, that paragraph was addressing sign permits, sign permits only. Appellants came into town and without applying for or securing building permits, electrical permits, or sign permits, proceeded directly to pouring cement and constructing 60-foot high, multi-ton, welded steel structures alongside Highway 101. And what we were simply saying in that paragraph was that even if there had been some unconstitutional provisions in the sign ordinance, these two signs still violated the size and height requirements, and it would have been the denied sign permits. They each needed a permit. That's why it's in plural, two sign permits. Could you help me a little with finding the size and height requirements there? I can't find them in the old ordinance. You bet. In the old ordinance, you can find the size and height requirements. Let me just get my exercise. Okay. They essentially start at Excerpts of Record, page 159, in Volume 1, for permitted signs dealing with height limits for high-rise buildings. And then if you proceed back to Section 2520.010 at page 163 of the Excerpts of Records, it discusses permitted signs, size and heights in commercial, residential. Thanks. And then there's tables at the end as well, which more clearly lay out the maximum size and height of signs permitted under this ordinance. And if you review those provisions, the maximum size of a sign that could be constructed in the city of San Mateo is dwarfed by the size of the signs that appellants created in this case. What do you do with the argument, well, there really is no size restriction where I was because there's no allowance for signs of any kind? Right. Billboards by their nature are expressly prohibited in the city of San Mateo, a proposition which has been approved by Metro Media and the progeny cases they're under. However, if you accept appellants' argument and you say, well, let's throw that out, let's say that for some reason the city could not have enacted a prohibition on off-site billboards, then what you would have gone to is, okay, so if we can't have that, if this was, for example, an on-site commercial sign, what would be the size and height limitations? And that would be the natural thing you would go to next. And as the declaration of William Warner in the excerpts of records shows, in this particular case, on the lots where appellants built their signs, the maximum sign space allowed square footage was 75 feet. Each of the appellant's signs had over 1,600 square feet. The maximum height of a sign on those parcels would have been 25 feet. Each of appellant's signs were 60 feet or higher. Do we need to get any farther than the general prohibition against off-site billboards? Your Honor, you could decide it on the fact that these were off-site billboards that were prohibited, that prohibition has been upheld. We extensively briefed at the district court that case law and showed why that was legitimate in this case. You really wouldn't have to reach it any further than that. The court really did make a sort of a hypothetical constitutional ruling, didn't it? I mean, it sort of said if it's unconstitutional, the unconstitutional parts would be severable. That's exactly right. I think the district court properly said, you know, I'm not going to make a constitutional adjudication on provisions of the sign ordinance, especially because it's no longer in effect. Instead, what I'm going to do is strike out the challenged provisions, the provisions that were challenged by appellants before the district court, and see what I have left. And what I have left are the definitions of signs, the definition of an on-site sign, the definition of an off-site sign, the size and height regulations. You have a fully functional ordinance left because contrary to appellants' current assertions, if you look at their briefs on summary judgment, they only attacked specific provisions in the old sign ordinances. For example, the exemptions from the definition of sign, the real estate signs that were allowed without a permit. We can strike all of those, and we still have left a fully functional ordinance, which is one of the primary reasons that this case is easily distinguishable from Desert Outdoor versus City of Moreno Valley, where they struck the majority of the ordinance. So there are a number of independent and separate grounds on which this court could and should affirm the district court's ruling. Briefly addressing the electrical and sign permit issue, the city's position is that people should not be able to rush into the city of San Mateo and construct permanent, large, hazardous signs and simply willfully ignore generally applicable building and electrical code provisions. That is just an unacceptable provision for any municipality. Simply because an appellant may have wanted to screen obscene films doesn't mean he could have opened an obscene film showing in a condemned fire-trapped theater. That's exactly what appellant's argument stands for, and it should be rejected by this court. And that itself is an independent ground on which this panel can rule. With respect to the evidence in the record, evidence about whether or not it really would have been futile to apply for building and electrical permits, there simply is none. As the district court noted, the only evidence submitted on this point by appellants, and make no mistake, it was appellant's burden. Where futility is at issue, the party proposing futility bears a heavy burden to demonstrate it. And as the district court noted, the only evidence submitted was a conclusory one-paragraph declaration from Mr. Fisher that had nothing to do with the city of San Mateo or those procedures. The district court correctly found that that evidence was simply not probative. It was not sufficient to create a triable issue of material fact that would prohibit the entry of summary judgment in the city's favor. If the court is interested in evidence that we have that would demonstrate the futility argument simply doesn't hold water, I can point that out in a number of places. First of all, as you may know, the permit process is a give-and-take procedure. When someone shows up with a set of specifications or plans and says, here's my building and electrical permit applications for a 60-foot high sign, it's not just stamped off right away. The building official goes in, looks at them, reviews them. If there's some deficiencies, there's a give-and-take procedure. So even though the sign, given its scope and its size and its purpose, may have violated the sign ordinance, there's no evidence that the building electrical permits would have been denied right off the bat. Second of all, in the new sign ordinance, specifically represented in excerpts of records, volume 1, page 124, the new ordinance makes clear that where signs require the issuance of building or other code permits for construction, those permits can be attained prior or concurrent with signed permits. So simply there's no evidence. I guess the one final point on that is it wasn't the city's burden to bring it forward. It was, at all times, the burden on appellants to make that record. They could have taken a deposition. They could have served in an interrogatory. They chose not to, and they rest on it. Tell us where to look in the excerpts or the local ordinances or whatever to see that building permits are to be obtained prior to signed permits. It's a proposition that's made clear in the new ordinance, and it's in excerpts of record, volume 1, at 124. How about prior to enactment of the new ordinance? Where was that requirement contained? It was contained in the building electrical codes sections. It was not contained in the signed permit itself, but there was no requirement that it be. I'm just introducing that as evidence to show that, basically, the city's position that there's no evidence that these permits would have been denied or that futility has been shown. Was there a permit? You get a building permit, presumably, before you start, something you put up on the location. Exactly. Is the electrical also a permit, or is it something that you're just required to have an inspection and pass it or something? Typically, you have to open or apply for the permit, building, electrical, and other generally permits before you start your project. That way, the city's on notice that something is going on within the city that requires an inspection, and the inspector can go out at different times to see, yes, this is being put up, it's being installed according to the plans and specifications that they provided to the city. So it's really – So a wiring diagram is submitted before you start, is that – Exactly. That's exactly right, so that the electrical inspector can go out and make sure that it's being installed according to plan to make sure these signs haven't built safely, which, again, is one of the major issues in this case, that none of that was done in this case, and we had hazardous billboards along Highway 101, which is simply an unacceptable situation, and the First Amendment does not countenance that kind of action. Thank you. If the court has other questions for me, then I'll just say in summation that under appellant's theory, anyone with a plausible First Amendment challenge to a municipal ordinance would be allowed to ignore generally applicable and unchallenged health and safety laws because the electrical and building codes were never challenged by appellants in this case. Your theory is that your argument could be sustained fully just on the electrical and building. Yes, Your Honor. Okay, but alternatively it could also on the size and weight, but we would need probably to find those severable. Yes, Your Honor, and there's also a third argument that we've fully briefed, that on the uncontroverted evidence before the district court, that these signs were in fact actual hazards that presented a danger to the citizens of San Mateo, and that's a third independent ground, but any of them will do in this case. Finally, just one point I did want to respond to. Appellants talk a lot about these other billboards that are in San Mateo and how unfair it is that there's these other billboards, and just because they may have complied with a signed permit, why should they have to comply as well? And the evidence in the record, particularly the supplemental declaration of Stephen Davis, which does not have, it's not represented in the table of contents of the excerpts of record, but it is located at volume three, page 758 to 759. Mr. Davis, who is the building official in San Mateo, sent out an inspector into the field to verify appellants' claim that there were two other billboards in San Mateo. In the vicinity of the signs that appellants built, Mr. Davis found one billboard, one preexisting billboard, and as he declares at page 759, a permit, a building permit was issued for that billboard in 1985. Other evidence in the record would be the declaration of Norma Gomez, which is located at volume three, 723 through 754. And attached as Exhibit A to that declaration is a 1989 city attorney memo. Basically, in 1989, the sign code was revised extensively, and the prohibition on the billboards of the type that were permitted in 1985 were subsequently banned. So that billboard had a permit. The ordinance was changed to ban these permits. There's no unequal treatment between these billboards whatsoever. I just wanted to point that out for the Court. If there's no further questions, I'll submit. Thank you, Counsel. Thank you, Your Honor. Thank you. I went back and looked at that, the admission I spoke about regarding what the city attorney said about the permits, and I would point out to the Court that he talks about permits plural. He doesn't talk about a signed permit. He talks about permits plural. And the other thing that troubles me about that is that the requirement for a permit is a very vanilla type of provision. It simply says you have to get a building permit before you build a sign. So there's nothing in that particular section of the ordinance which could be pointed out to be unconstitutional. Instead, it is essentially the way it is applied in this case that makes it unconstitutional. If the evidence before the district court was that we submit evidence we could not get a building permit or an electrical permit because the city was enforcing its unconstitutional ordinance in that way, we have an as-applied as well as a facial challenge in the complaint. What a lot of this evidence seems to go to is disputed issues of fact. And this is a summary judgment motion. But what's the matter with the city's argument that you're in the position of somebody who wants to show arguably constitutionally protected dirty movies in a condemned building, and you never have to get past the condemned building part of the case? Because those are completely separate issues. There's a health and safety code issue regarding whether a building is a – Why reach the constitutional issue if you're trying to show the movies in a condemned building? Your Honor, I do these type of challenges basically regularly. And if the slams are not constructed, the city says we have no standing, because they change the ordinance after the law goes into effect. To me, it's like somebody says I have a right to make a speech about the Vietnam War in the middle of calculus class. Well, Your Honor, going back to the Shuttlesworth case, if those protesters had said we – there's a separate ordinance that says we have to get a parade permit. Do we have to go into court and challenge that very vanilla, very plain requirement that you get a parade permit by showing that the requirement is being applied in a way to discriminate and violate the Constitution? That's not what the court said. The court said you can go ahead and engage in civil disobedience. You can go ahead and challenge the entire scheme. If we had done what the city is suggesting, we would never be here, because they would have changed their law three times before this case came to trial, which is what they did in the course of this litigation. Counsel, in Shuttlesworth, wasn't the pivotal fact that the permitting official had unfettered discretion? Yes, Your Honor. And in this case, we made that argument as well. And, in fact, on the size requirements, there is a provision in the code which allows – under the old ordinance, which allows an exemption to be made from the size requirements that the city attorney is talking about. And that was another basis of our challenge, that the ordinance bestowed unfettered discretion on city officials both to allow signs, to control their content, and to control their size. And if the city can waive those size restrictions when it deems it appropriate, that is exactly the kind of unfettered discretion that the Desert Outdoor case, the Moreno Valley case, held to be unconstitutional. My time is up, unless the court has anything else. Thank you. Virtual media versus City of San Mateo. Admitted.
judges: Canby, Kleinfeld, Rawlinson